# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., as trustee, <br><br> Plaintiffs, <br><br> v. <br><br> HYDRO TEMP, INC., <br><br> Defendant. | Case No. 14-cv-09642 <br><br> Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Central States, Southeast and Southwest Areas Pension Fund (the "Fund"), and Arthur H. Bunte, Jr., as trustee, filed a complaint under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* to collect statutory withdrawal liability from Hydro Temp, Inc. ("Hydro Temp") for ending its relationship with the Fund. The Fund now moves for summary judgment in its favor [23]. For the reasons stated herein, the motion is granted.

**Background**

The following facts are undisputed. The Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(3). Hydro Temp is a heating and cooling contractor. During all relevant times, Hydro Temp was subject to collective bargaining agreements executed with a local union affiliated with the International Brotherhood of Teamsters. The collective bargaining agreement required Hydro Temp to contribute to the Fund on behalf of some of its employees. While Hydro Temp was signatory to the collective bargaining agreement it employed only two union employees who held the same position consecutively. In April 2013, the sole union

1

employee voluntarily left employment with Hydro Temp.

On April 28, 2013, Hydro Temp permanently ceased to have an obligation to contribute to the Fund and permanently ceased all covered operations. On May 15, 2014, the Fund sent Hydro Temp notice of its demand for withdrawal liability in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1). The Fund demanded principal withdrawal liability in the amount of $239,523.15. On June 17, 2014, the Fund sent Hydro Temp notice that its withdrawal liability payments were past due and advised Hydro Temp of the consequences of failing to pay. The Past Due Notice stated that Hydro Temp had 60 days to make its withdrawal liability payments or it would be in default and the entire amount would become due. Hydro Temp does not dispute that it received the notices.

On August 14, 2014, Hydro Temp submitted a request to the Fund pursuant to 29 U.S.C. § 1399(b)(2)(A) for review of the withdrawal liability assessment. On September 19, 2014, the Fund notified Hydro Temp that the Fund's Board of Trustees rejected Hydro Temp's request for review and reaffirmed the withdrawal liability assessment. Hydro did not initiate arbitration.

Hydro Temp has not made any withdrawal liability payments to the Fund. Under the Fund's Trust Agreement, the Fund calculates interest on delinquent withdrawal liability at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged. The Fund's Trust Agreement provides for liquidated damages in the amount of 20% of the delinquent withdrawal liability. The Trust Agreement also provides for post-judgment interest on the entire withdrawal liability judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, N.A., for the fifteenth day of the months for which the interest is charged, compounded annually. Hydro Temp asserts that it has insufficient funds and assets to satisfy the withdrawal liability demand from the Fund.

**Legal Standard**

A party is entitled to summary judgment if all of the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

**Discussion**

The Fund moves for summary judgment, arguing that it followed the necessary notice procedures under the MPPAA, Hydro Temp did not seek arbitration, and the withdrawal liability is now owed. The MPPAA "subjects employers who withdraw from a multi-employer pension fund to 'withdrawal liability' equal to its proportionate share of the plan's unfunded vested benefits." *Central States, SE & SW Areas Pension Fund v. Neiman,* 285 F.3d 687, 594 (7th Cir. 2002); 29 U.S.C. §§ 1381-1461. Withdrawal liability payments protect other employers in the plan from having to pay those benefits. *Santa Fe Pacific Corp. v. Central States, SE and SW Areas Pension Fund,* 22 F.3d 725, 727 (7th Cir. 1994).

The Fund must "determine the amount of withdrawal liability owed by the withdrawing employer, 29 U.S.C. §§ 1382, 1391, and send the employer a notice and demand for payment of that amount, 29 U.S.C. § 1399(b)(1)" in order to collect payment from the employer. *Central States, SE & SW Areas Pension Fund v. Bomar National, Inc.,* 253 F.3d 1011, 1014 (7th Cir. 2001) (quoting *Central States, SE & SW Areas Pension Fund v. Ditello,* 974 F.2d 887, 888 (7th Cir. 1992)). An employer has 90

days from receiving the notice and demand from the Fund to informally challenge the withdrawal liability. 29 U.S.C. § 1399(b)(2)(A). If the issue is not resolved informally upon the employer's complaint, the employer must initiate the MPPAA's arbitration procedure within 60 days after the earlier of either the Fund's response to the employer's initial complaint, or 120 days after the employer requests additional information from the Fund as part of the informal conciliation efforts. 29 U.S.C. § 1401(a)(1). "If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." 29 U.S.C. § 1401(b)(1).

The parties do not dispute that the Fund sent the notice and demand and that Hydro Temp submitted a late request for review of the withdrawal liability assessment. The parties also do not dispute that Hydro Temp never sought arbitration. The Fund seeks immediate payment of the entire amount of withdrawal liability pursuant to 29 U.S.C. § 1399(c)(5), which governs defaults on payments. Hydro Temp objects, arguing that the assessment of withdrawal liability is an unconstitutional taking in violation of the Takings Clause of the 5th Amendment to the United States Supreme Court. The Fund asserts that Hydro Temp has waived any objections to the assessment of withdrawal liability by forgoing arbitration. *See Central States, SE & SW Areas Pension Fund v. Slotky,* 956 F.2d 1369, 1373 (7th Cir. 1992). Hydro Temp does not provide any arguments with respect to waiver. This Court therefore finds Hydro Temp has waived its objections to the assessment of withdrawal liability. In the interest of completeness, the Court will address Hydro Temp's takings argument.

To support its constitutional challenge to the assessment of withdrawal liability, Hydro Temp relies primarily on Justice O'Connor's concurrence in *Connolly v. Pension Benefit Guaranty Corporation*, 475 U.S. 211, 228, 89 L. Ed. 2d 166, 106 S.Ct. 1018 (1986), wherein Justice O'Connor

4

posited that the court had not resolved whether the MPPAA might be defeated in an "as applied" challenge despite it being facially constitutional. "Justice O'Connor is concerned that in some cases the connection between the actions of a given employer and the unfunded benefits can be so attenuated that holding them liable for it could amount to an arbitrary, irrational action by Congress." *Central States, SE & SW Areas Pension Fund v. Midwest Motor Express, Inc.,* 181 F.3d 799, 807 (7th Cir. 1999) (holding that, even if it adopted the concurrences as law, it would not change the result that the employer's constitutional challenge to the assessment under the MPPAA as applied to it was not a taking).

Hydro Temp also relies on *Eastern Enterprises v. Apfel,* 524 U.S. 498, 141 L. Ed.2d 451, 118 S.Ct. 2131 (1998), to support its takings argument. In *Eastern Enterprises*, the employer's liability under the Coal Act depended solely on its employees from 30 to 50 years before the enactment of the Coal Act. *Id.* at 531. The court found an unconstitutional taking where the statute imposed a severe retroactive liability on the employer who could not have anticipated the liability, which was substantially disproportionate to the employer's experience. *Eastern Enterprises,* 524 U.S. at 537. The situation here is distinguishable from *Eastern Enterprises*.

In *Connolly,* the court identified three principal factors to evaluate a regulatory taking: "(1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation interferes with the claimant's reasonable investment-backed expectations, and (3) the nature of the governmental action." *Eastern Enterprises,* 524 U.S. at 519 (citing *Connolly,* 475 U.S. at 225, and quoting *Eastern Enterprises v. Apfel,* 110 F.3d 150, 160 (1st Cir. 1997). Hydro Temp's argument addressing each of these factors is insubstantial and unpersuasive.

First, Hydro Temp asserts that the economic impact is significant because it had losses of nearly $200,000 over the preceding three years and it lacks sufficient assets to pay the assessment. Hydro Temp contends that the withdrawal liability sought in this case is nearly 40 times the annual

5

contributions for the union position and is disproportionate to its experience with the Fund.[1] Yet, Hydro Temp does not provide any financial documentation to support its assertions. "The loss at issue must be compared to something in order to assess its impact[.]" *Midwest Motor Express, Inc.*, 181 F.3d at 808. Second, Hydro Temp contends that it had no bargaining power when selecting the Fund because it only had one employee who would receive the benefits. Lastly, to show that the character of the governmental action as applied is "extreme," Hydro Temp reiterates its assertion that the withdrawal liability is equal to 40 years of Hydro Temp's contributions.

By its terms the MPPAA connects withdrawal liability to the employer's proportionate share of the plan's unfunded vested benefits or the difference between the present value of the Fund's assets and the present value of the benefits it will be obligated to pay in the future. 29 U.S.C. §§ 1381, 1391. The Fund bases this value on the employer's contributions for the ten years of contribution preceding withdrawal as compared to the total contributions paid by all the participating employers. (*See* Dkt. 25-1, Ex. 1 to Ex. A of the Fund's Trust Agreement and Pension Plan Document). Hydro Temp's assertion that it had no bargaining power is also unsupported. Hydro Temp chose to employ a union employee for 25 years after the enactment of MPPAA and in doing so knew it would have to make benefit contributions to a multiemployer plan. This Court therefore finds Hydro Temp's argument unsupported by both case law and the record on summary judgment.

---

[1] Hydro Temp continually refers to its sole employee subject to the contributions, but Hydro Temp admits that it was in fact two employees who worked consecutively in the same position.

**Conclusion**

Based on the foregoing, this Court grants the Fund's motion for summary judgment [23].

IT IS SO ORDERED.

Date: December 1, 2015

Entered:
SHARON JOHNSON COLEMAN
United States District Judge